## WOOD & WHITAKER vs. TOMPKINS.

1 There is equity in a bill by a security for the defendant in an action of trover, who has paid the judgment or a part of it to have an account from persons to whom the property was delivered during the pendency of the suit, under a collusive agreement to defraud the surety.

2 An agreement made by a defendant in action of trover with other persons, that they shall have the possession and profits of the labor of the negroes sued for, provided they will become his surety for the forthcoming of the property to answer the judgment, does not protect them against an account, at the instance of a security on the appeal who has paid a part of the judgment, for the value of the hire or profits to the extent that the surety has paid the judgment.

In equity, in Heard superior court. Tried before Judge Rice, August Term, 1858.

This bill was filed by defendant in error against the plaintiffs in error, and alleges, in substance, that in March, 1844, Wilson W. Brooks, as administrator of George M. Smith, deceased, instituted his action of trover against one Charles Foster, for the recovery of seventeen negroes; that Foster confessed judgment in said action, reserving

the right of appeal; that complainant became security on said appeal for Foster, and at November Term, 1850, Brooks recovered judgment against Foster for about eleven thousand dollars, to be discharged by the surrender of the negroes, and the further sum of thirty-five hundred dollars, for the hire; that the negroes were delivered up, and execution issued against Foster and complainant, as his security, for the hire and cost, which was paid off in full by complainant, Foster being insolvent and having fled the country; and complainant thereby became subrogated to all the rights of Brooks, and entitled to the full control of said execution for the purpose of reimbursing himself.

The bill further states that, pending the aforesaid action of trover, complainant took steps to require Foster, his principal in said appeal bond, to give bond and security for the forthcoming of the negroes to answer the final judgment in the cause; that in order to induce Whitaker and Wood to become his securities, and all combining to defraud and injure complainant, Foster entered into an agreement with them by which, in consideration that they would become his sureties in said *quia timet* suit, for the forthcoming of said negroes to answer the judgment in trover, they, the said Wood and Whitaker, should have the use, hire and labor of said slaves.

The bill further states that, under this agreement, Whitaker and Wood took possession of the negroes and held them for several years, during the pendency of said action of trover, and received their hire and labor, amounting to more than three thousand dollars.

The prayer of the bill is, that defendants account for the hire and labor of said negroes thus received by them, and that the amount be paid to complainant in satisfaction of the execution, issued as above stated, in the trover case, and which complainant was compelled to pay.

The defendants admit, in their answer, all the facts stated in the bill in relation to the action of trover,—the

appeal—the agreement referred to; but they state that they delivered the negroes to the sheriff, before the recovery of the judgment in trover, in discharge of the bond which they had given upon a bill of *quia timet* filed by complainant against Foster and one of these defendants, Whitaker, for the forthcoming of the negroes to answer the final judgment that might be obtained in said action of trover.

The defendants further answer and charge, that complainant received in payment or reimbursement of the amount paid by him for Foster on the execution, the sum of $1791 from the sale of negroes belonging to Foster, in July, 1851, and that he had received a large sum of money out of other property of said Foster and its hire, sufficient to repay him the amount he paid as surety on said execution.

They admit that they took possession of the negroes under the agreement aforesaid, and which they held until the latter part of 1848, when, after notice to complainant, they surrendered and delivered them to the sheriff, and were informed by plaintiff's counsel, who was present at the time, that they were then discharged from all liability.

At the trial, defendants moved to dismiss complainant's bill, on the ground that there was no privity between complainant and defendants. The court refused the motion, and defendants excepted.

The case was then submitted to the jury upon the pleadings, proofs and charge of the court.

Counsel for defendants requested the court to charge the jury that if they believed, from the evidence, that defendants came into the possession of the negroes under an agreement with Foster, that they were to have the use of the same during the pendency of the action of trover, in consideration of their becoming his sureties,—then they will find for the defendants; which charge the court refused to give, and counsel for defendants excepted.

11

The jury found for the plaintiff fourteen hundred and ninety dollars. ·

Whereupon counsel for defendants tender their bill of exceptions, and assign as error the decisions and refusal to charge, above excepted to.

L. E. Bleckley and R. W. Simms, for plaintiffs in error.

B. H. Hill, contra.

By the Court.—McDonald, J., delivering the opinion.

We think that the court below committed no error in respect to the matters on which error is assigned in the record before us.

1. If the allegations in the bill are true, which must be assumed on a motion to dismiss it for the want of equity, there is not the slightest ground on which such a motion ought ;to be sustained. The complainant alleges that pending an action of trover which had been instituted against one Charles Foster for the recovery of a number of negroes, and in which cause the said Foster entered an appeal and complainant became his security on the appeal bond, the defendants to said bill in the court below, Wood and Whitaker, with a full knowledge of the pendency of said suit for the recovery of the negroes and their hire, and that complainant had become his security on the appeal, contriving to appropriate the hire and use of said negroes to themselves, and to defraud and injure the complainant, colluded and combined to that end, and entered into a written agreement with the said Foster by which, in consideration that they would become securities for the said Foster for the forthcoming of the said negroes to answer the judgment in said action of trover, they, the said Wood and Whitaker, should have the hire of said negroes.

Wood & Whitaker vs. Tompkins.

The bill alleges the payment of the hire of the negroes by complainant as surety of Foster, and that long before the rendition of the judgment in the action of trover the said Foster had been, aside from the property sued for in said action of trover, utterly and notoriously insolvent, and soon after fled the country. The bill required the defendants to account for the hire of the negroes. Now there can be no question if Foster was insolvent, or I will say, tending to insolvency, when he made the agreement with Wood and Whitaker to take the hire of the identical negroes sued for in the action of trover, under a combination and collusion with each other to defraud the complainant, he has a right to have an account from them. The complainant was already the security of Foster, at the time of the agreement and delivery of the negroes to Wood and Whitaker, and was liable to have his property seized and sold as soon as an execution could be issued upon a judgment which might be recovered against Foster for the negroes and their hire. Why did he not deliver the property to the complainant, his first surety, for his indemnity? The bill says it was his object to defraud him. We think that there is much equity in the bill, and that the motion to dismiss ought not to have prevailed.

2. The court ought not to have given in charge to the jury the instructions asked by the counsel for plaintiffs in error. Foster could not, by agreement with other persons, impair the rights and remedies of his security on the appeal, if the parties contracted with knew his rights. Notice of them would place them precisely in Foster's place.

But, on another principle, the defendant in error had a right to have an account from them. At the time they entered into the agreement with Foster, the plaintiffs knew, necessarily, that the negroes and their hire were sued for, and whether Foster was insolvent or not, as soon as they possessed themselves of the negroes and converted

them they were as much subject to an action of trover at the instance of the owner as Foster was, and the plaintiff had the same right to sue them, and recover and have satisfaction of such part of the judgement as was not paid by Foster, that they had to sue and recover and have satisfaction from Foster. By our statute the title of property sued for and recovered does not vest in the defendant until the verdict is paid. Now, the property put in the possession of plaintiffs in error, and of which they received the profits for the time, was the property of Brooks, as administrator, and it was known to them at the time they received it, that suit was pending for its recovery. If Brooks, the administrator, had not obtained satisfaction from the defendant in error as the security of Foster, he might, unquestionably, have recovered the hire from the plaintiffs in error, in the shape of damages for the time they had the negroes. As Foster is insolvent, and the security has paid a part of the judgment, he is entitled, *in equity*, to be subrogated to the rights of Brooks the administrator, against the plaintiffs in error, and that is to recover from them, to the extent of the value of the hire of the negroes for the time they held them, any part of the judgment which Foster or his effects have not paid.

We think, therefore, that the court below must be sustained in his refusal to give in charge to the jury the request submitted in writing by the counsel.

Judgment affirmed.